UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

                Plaintiffs,

   v.                               No. 08-cv-_____

UNITED STATES DEPARTMENT
OF DEFENSE
1600 Defense Pentagon
Washington, DC 20301

                Defendant.

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate processing and release of agency records requested by plaintiffs from defendant Department of Defense ("DoD").

2.      Plaintiffs' FOIA request ("Request"), which was submitted on July 17, 2007, seeks the release of all records relating to deaths (including suicides, natural deaths, accidental deaths, and homicides), attempted suicides and attempted homicides, since January 2002, of prisoners held at the U.S. naval base at Guantanamo Bay, Cuba ("Guantanamo"). Plaintiffs include in their Request records relating to four specific prisoner deaths, three in 2006 and one in 2007, which the government has identified as suicides.

3.        Since the U.S. government first transferred prisoners to Guantanamo in January 2002, the off-shore detention camp has been the subject of intense world-wide scrutiny and controversy.  At the heart of the controversy are government policies that violate core constitutional principles of due process and fair treatment:  indefinite detention, resistance to independent judicial review of the alleged bases for detention, and prisoner abuse.  The government has denied independent human rights monitors and the media access to any prisoner held at Guantanamo.

4.        According to published reports, the impact on the prisoners of the government's policies and practices has been dire; hunger strikes and suicide attempts began soon after the camp opened.  As the period of the prisoners' captivity lengthened into years, lawyers for a number of the men warned in media accounts that their clients would kill themselves in despair.  In response, the government insisted that hunger strikes and suicide attempts were a form of "asymmetric warfare."  In 2006, after three prisoners apparently killed themselves by hanging, government officials claimed their deaths were a "PR move."  The government refused to release suicide notes, the existence of which was widely reported.  In 2007, another prisoner reportedly committed suicide and a fifth man died of what the government stated were natural causes.

5.        Even though defendant DoD confirmed in media accounts that it opened investigations into each of the four reported suicides, it has released no records relating to any of them or to the dozens of suicide attempts it admits have also occurred.  In light of the importance to the public of information about prisoner treatment and detention policies at Guantanamo, the government has no basis to shield records relating to prisoner deaths or attempted deaths.  Making public information about the deaths or attempted deaths is necessary for the public to assess both their causes and their human and policy consequences.

6.        Plaintiffs also requested expedited processing and a waiver of all costs. Defendant DoD denied plaintiffs' request for expedited processing by letter dated July 30, 2007.

Plaintiffs' August 23, 2007 appeal to the Office of Freedom of Information was denied on September 14, 2007. As of the date of this filing, defendant agency has failed to produce any records.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction of the FOIA claim and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

7.      Plaintiffs have exhausted administrative remedies.

## Parties

8.      Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (together, "ACLU") comprise a national organization that works to protect civil liberties and civil rights. Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan, 501(c)(4) organization with over 500,000 members dedicated to the constitutional principles of liberty and equality. Plaintiff American Civil Liberties Union Foundation ("ACLUF") is a separate 501(c)(3) organization that provides free legal representation and educates the public about civil rights and civil liberties issues. The ACLUF is committed to ensuring that the treatment of prisoners within U.S. custody is consistent with the government's obligations under domestic and international law. The ACLUF has filed multiple FOIA requests – through which it has obtained and distributed to the public over 100,000 pages of documents – pertaining to the government's treatment of these prisoners. These distributions have resulted in large numbers of news reports in major media outlets throughout the United States and the world.

9.        Defendant DoD is a Department of the Executive Branch of the United States Government.  The DoD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTS

### Deaths at Guantanamo Bay

10.        To date, the U.S. government has held approximately 770 men and boys at Guantanamo.  According to Defendant DoD, as of March 2008, about 280 prisoners remain.  Almost all Guantanamo prisoners were held for a period of years, and some have now passed their seventh anniversary at the camp.

11.        The treatment of prisoners at Guantanamo and, specifically, deaths and attempted deaths (and their causes and consequences), have consistently been the subject of media attention.  Reports indicate that a number of suicide attempts occurred after a new commander, Maj. Gen. Geoffrey Miller, was assigned to Guantanamo "with a mandate to obtain more information from detainees accused of having ties to Al Qaeda or the former Taliban government in Afghanistan." *23 Detainees Attempted Suicide in Protest at Base, Military Says*, Associated Press, Jan. 25, 2005.  In 2005, military officials disclosed that, in August 2003, twenty-three prisoners attempted to hang themselves in an eight-day period.  Two of the men required hospitalization.  *Id.*  These were only a small portion of the 350 occurrences the government refers to as "self-harm" incidents in 2003.  *Id.*   Included in the 350 incidents were 120 so-called "hanging gestures."  *Id.*

12.        DOD officials admit that by June 10, 2006, at least forty-one suicide attempts had occurred at Guantanamo. Adam Zagorin & Richard Corliss, *Death Comes to Guantanamo*, Time, June 19, 2006.  By 2005, hunger strikes, sometimes resulting in force-feedings, had become a norm of detention.  *See, e.g.*, Jackie Northam, *Hunger Strike Continues at Guantanamo Bay*, NPR, September 14, 2005; Mike Mount, *Hunger Strike at Guantanamo*

*Grows: Eighteen Detainees Being Force-Fed; 128 Now Refusing to Eat*, CNN, September 13, 2005; Josh White, *Guantanamo Desperation Seen in Suicide Attempts; One Incident Was During Lawyer's Visit*, Wash. Post, Nov. 1, 2005.

13.     On June 10, 2006, three Guantanamo prisoners reportedly committed suicide by hanging.  Two of these prisoners, Mani Shaman Turki al-Habardi al-Utaybi and Yassar Talal al-Zahrani, were Saudi Arabian nationals.  The third, Ali Abdullah Ahmed or S__lah_ Addin Ali Ahmed al-Salam_, was Yemeni. Tim Golden, *The Battle for Guantanamo*, N.Y. Times, Sept. 17, 2006, at § 6 (Magazine).  Defendant DoD's officials told the media that al-Utaybi, who was 29 or 30 years old at the time of his death, had been cleared for release into the custody of another country.  Charlie Savage, *Criticism of Guantanamo Rises; Pentagon IDs 3 Who Killed Selves*, Boston Globe, June 12, 2006.  The second Saudi prisoner, Al-Zahrani, was 17 when he was captured and sent to Guantanamo, and was 21 or 22 when he died.  David S. Cloud & Neil A. Lewis, *Prisoner's Ruse Is Inquiry Focus at Guantanamo*, N.Y. Times, June 12, 2006; Carol Rosenberg, *Rituals Conducted for Dead Detainees*, Miami Herald, June 14, 2006.  Defendant DoD's officials also disclosed that Ahmed, who was also in his late 20s when he died, had been a persistent hunger striker.  Charlie Savage, *Criticism of Guantanamo Rises; Pentagon IDs 3 Who Killed Selves*, Boston Globe, June 12, 2006; Carol Rosenberg, *Rituals Conducted for Dead Detainees*, Miami Herald, June 14, 2006.

14.     The deaths received extensive media coverage.  *See, e.g.*, *23 Detainees Attempted Suicide in Protest at Base, Military Says*, Associated Press, Jan. 25, 2005; *Guantanamo Suicide Tries Called 'Coordinated Effort,'* CNN, Jan. 24, 2005; Josh White, *Guantanamo Desperation Seen in Suicide Attempts; One Incident Was During Lawyer's Visit*, Wash. Post, Nov. 1, 2005; Sgt. Sara Wood, *Three Guantanamo Bay Detainees Die of Apparent Suicide*, American Forces Information Service, June 10, 2006; *U.S. Identifies Dead Gitmo Detainees*, MSNBC, June 11, 2006; James Risen and Tim Golden, *3 Prisoners Commit Suicide*

*at Guantanamo*, N.Y. Times, June 11, 2006; James Risen and Tim Golden, *Saudi Arabia*

*Identifies 2 Dead Guantanamo Detainees*, N.Y. Times, June 11, 2006; *3 Gitmo Suicides*

*Identified*, CBS, June 11, 2006; *Guantanamo Suicides a 'PR move,'* BBC News, June 11, 2006;

*Guantanamo Suicides 'Acts of War,'* BBC News, June 11, 2006; David S. Cloud & Neil A.

Lewis, *Prisoner's Ruse Is Inquiry Focus at Guantanamo*, N.Y. Times, June 12, 2006; *U.S. Steps*

*Back From Gitmo Suicide Comments*, Associated Press, June 12, 2006; *Gitmo Detainee Was*

*Cleared for Transfer*, Fox News, June 12, 2006; *Suicides Fuel Guantanamo Criticism*, CNN,

June 12, 2006; Charlie Savage, *Criticism of Guantanamo Rises; Pentagon IDs 3 Who Killed*

*Selves*, Boston Globe, June 12, 2006; Thomas E. Ricks, *Three Detainees Who Committed Suicide*

*Are Identified*, Wash. Post, June 12, 2006; *Pentagon IDs Gitmo Detainees Who Committed*

*Suicide; 1 Was Up for Transfer*, USA Today, June 12, 2006; David S. Cloud, *State Department*

*Disavows Statement on Suicides*, N.Y. Times, June 13, 2006; *Guantanamo Inmate Was to Be*

*Moved*, Al-Jazeera, June 13, 2006; Carol J. Williams, *Outcry Over Suicides at Guantanamo*,

L.A. Times, June 13, 2006; Michael Rowland, *–U.S. Official Calls Guantanamo Suicides a PR*

*Tactic*, Australian Broadcasting Corp., June 13, 2006; Carol Rosenberg, *Rituals Conducted for*

*Dead Detainees*, Miami Herald, June 14, 2006; *Father Queries Guantanamo Suicide*, B.B.C.

News, June 14, 2006; *Father of Gitmo Suicide Blames U.S.*, MSNBC, June 14, 2006; *Gitmo*

*Inmate's Family Demands Autopsy, Refutes Suicide Claim*, Fox News, June 15, 2006; Carol

Rosenberg, *Detainees Unaware of Lawyers*, Miami Herald, June 16, 2006; Carol Rosenberg,

*About the Dead Guantanamo Detainees*, Miami Herald, June 19, 2006; *U.S. Sends Home Bodies*

*of 3 Detainees*, Australian Broadcasting Corp., June 17, 2006; Ahmed Al-Hajj, *Father Demands*

*Guantanamo Suicide Probe*, Wash. Post, June 18, 2006; Khaled Almaeena, Op-Ed., *Death in*

*Guantanamo*, Arab News, June 18, 2006; Samir Al-Saadi & Ali Al-Jibreel, *'Yasser's Body Bears*

*Marks of Beating,'* Arab News, June 19, 2006; Mariam Al Hakeem, *Vital Organs Missing from Repatriated Body: Family*, Gulf News, June 21, 2006; Habib Toumi, *Ex-Detainee Disputes Triple Suicide Report*, Gulf News, June 25, 2006; Carol Rosenberg, *How Could Detainee Suicides be Prevented?*, Miami Herald*, June 25, 2006; Nadia Al-Sakkaf, *Gitmo Detainee Buried After Body Cross-Examined*, Yemen Times; Stevenson Jacobs, *Guantanamo Suicide Prisoners 'Showed No Sign of Being Depressed,'* Indep., June 28, 2006; Carol J. Williams, *Guantanamo Officials Say They Can't Stop All Suicides*, L.A. Times, June 28, 2006; Hassan M. Fattah, *With Autopsy Still Pending, Saudis Bury a Guantanamo Detainee*, N.Y. Times, June 29, 2006; Tim Golden, *The Battle for Guantanamo*, N.Y. Times, Sept. 17, 2006, at § 6 (Magazine).

15.     Defendant DoD's officials suggested that the three men acted in concert and took detailed steps to avoid detection. James Risen and Tim Golden, *3 Prisoners Commit Suicide at Guantanamo*, N.Y. Times, June 11, 2006; David S. Cloud & Neil A. Lewis, *Prisoner's Ruse Is Inquiry Focus at Guantanamo*, N.Y. Times, June 12, 2006; Adam Zagorin & Richard Corliss, *Death Comes to Guantanamo*, Time, June 19, 2006.  All three left notes in Arabic, the contents of which have not been made public by Defendant DoD, though they have been translated. David S. Cloud & Neil A. Lewis, *Prisoner's Ruse Is Inquiry Focus at Guantanamo*, N.Y. Times, June 12, 2006.  Military officials later stated that guards found nooses in other prisoner cells, indicating that those prisoners may also have planned to participate in the suicides.  Hassan M. Fattah, *With Autopsy Still Pending, Saudis Bury a Guantanamo Detainee*, N.Y. Times, June 29, 2006.

16.     After the deaths, defendant DoD's pathologists conducted autopsies and military officials stated they were reviewing detention procedures to determine how to avert future suicide attempts.  Carol J. Williams, *Outcry Over Suicides at Guantanamo*, L.A. Times,

June 13, 2006.  Defendant DoD also announced that the Naval Criminal Investigative Service

would investigate the deaths.  *Id*.  Senior military officials told reporters that the investigation

would examine whether military procedures were adequate to prevent suicides and whether the

procedures were followed.  David S. Cloud & Neil A. Lewis, *Prisoner's Ruse Is Inquiry Focus

at Guantanamo*, N.Y. Times, June 12, 2006.  The bodies of the three men were sent back to their

respective countries by the end of June 2006.  Hassan M. Fattah, *With Autopsy Still Pending,

Saudis Bury a Guantanamo Detainee*, N.Y. Times, June 29, 2006.

      17.      Counsel for other Guantanamo prisoners stated that the deaths were a

foreseeable consequence of the government's indefinite detention policy and predicted other

deaths were likely to occur.  Carol J. Williams, *Outcry Over Suicides at Guantanamo*, L.A.

Times, June 13, 2006.  The admiral then in charge of Guantanamo's detention operations

claimed the suicides "were not acts of despair but coordinated efforts by three committed

combatants."  *Id.*  A State Department official responsible for improving the United States'

image told the BBC that the deaths were "a good PR move to draw attention."  *Guantanamo

Suicides a 'PR move,'* BBC News, June 11, 2006.  The government response to the deaths

resulted in widespread criticism, both at home and abroad.  Charlie Savage, *Criticism of

Guantanamo Rises; Pentagon IDs 3 Who Killed Selves*, Boston Globe, June 12, 2006.

      18.      The fourth death, the reported suicide of Abdul Rahman Maadha al-Amry or

'Abd al-Rah_m_n al-'Amr_, a Saudi national born in 1973, took place on May 5, 2007.  Both the

death and the general issue of the conditions of detainees in U.S. custody at Guantanamo

continued to receive extensive and unabated media coverage.  *See, e.g.*, Ben Fox, *Guantanamo

Detainee Threatens Suicide*, AP News, May 21, 2007; *Guantanamo Detainee Vows Another

Suicide Attempt*, USA Today, May 20, 2007; *Guantanamo Bay Detainee Commits Suicide in

*Cell*, Fox News, May 30, 2007; *Guantanamo Detainee Dies in Apparent Suicide*, USA Today, May 30, 2007; *Saudi Detainee Killed Self at Gitmo, Military Says*, CNN, May 30, 2007; Jane Sutton, *Saudi Prisoner Kills Self at Guantanamo, U.S. Says*, Reuters, May 30, 2007; Michael Melia, *Guantanamo Detainee an Apparent Suicide*, ABC News, May 30, 2007; Michael Melia, *U.S.: Dead Detainee Was of High Value*, Associated Press, May 31, 2007; *Guantanamo Prisoner in Apparent Suicide*, The Australian, May 31, 2007; *Guantanamo Saudi 'Kills Himself,'* BBC News, May 31, 2007; Ben Fox, *Guantanamo Detainee Who Died in Apparent Suicide Was Saudi Veteran, Jihadist*, AP News, May 31, 2007; Renee Montagne and Jackie Northam, *New Suicide at Guantanamo Bay*, NPR, May 31, 2007; Jane Sutton, *Guantanamo Inmate Found Dead After Apparent Suicide*, NEWS.com.au, May 31, 2007; *Guantanamo Inmate Dead in Suspected Suicide*, Australian Broadcasting Corp., May 31, 2007; William Glaberson, *Detainee Found Dead in Guantanamo Cell*, N.Y. Times, May 31, 2007; Josh White, *Death of Guantanamo Detainee Is Apparent Suicide, Military Says*, Wash. Post, May 31, 2007; Josh White, *Detainee Found Dead Trained With U.S. Forces*, Wash. Post, June 1, 2007; Rupert Cornwell, *Guantanamo 'Suicide' Was in Maximum-Security Cell*, Indep., June 1, 2007; William Glaberson & Margot Williams, *Pentagon Files Offer Details on Detainee in Suicide*, N.Y. Times, June 1, 2007 ; *Guantanamo "Suicide" Inmate Named*, B.B.C. News, June 1, 2007; Andrew O. Selsky, *U.S. Probing Apparent Gitmo Suicide*, AP News, June 12, 2007; *U.S. Military Probes Guantanamo Suicide*, USA Today, June 12, 2007; *Military Looking into Suicide of Guantanamo Bay Detainee*, Fort Worth Star-Telegram, June 13, 2007; Michael Sung, *US Military Investigating Apparent Suicide of Guantanamo Detainee*, Jurist, June 13, 2007; Carol Rosenberg, *Navy Still Probing 2006 Guantanamo Deaths*, Miami Herald, July 3, 2007.

19.        Defendant DoD has not released information explaining why al-Amry's death was ruled a suicide, but said that he was found "unresponsive" and "not breathing," and that the cause of death was "under investigation."  Michael Melia, *U.S.: Dead Detainee Was of High Value*, Associated Press, May 31, 2007.  According to defendant DoD, al-Amry was a "persistent hunger striker" whose weight had dropped to 88.5 pounds.  William Glaberson & Margot Williams, *Pentagon Files Offer Details on Detainee in Suicide*, N.Y. Times, June 1, 2007.  An autopsy was eventually conducted sometime during the weekend of June 1, and al-Amry's body was sent back to Saudi Arabia while the Naval Criminal Investigative Service continued to investigate his death.  Carol Rosenberg, *Remains of Dead Saudi Leave Guantanamo*, Miami Herald, June 3, 2007.  Navy Rear Adm. Mark H. Buzby, then commander of the Joint Task Force-Guantanamo, stated that two investigations were ongoing: one into the actions of al-Amry, and one into "guard participation."  *U.S. Military Probes Guantanamo Suicide*, USA Today, June 12, 2007.

20.        A fifth detainee, Abdul Razzak, 68, who had been held at Guantanamo for five years, reportedly died from natural causes on December 30, 2007.  Carol J. Williams, *The Nation; Guantanamo Bay Detainee, 68, Dies of Cancer; The Afghan Native Was Accused of Being a Member of the Taliban*, L.A. Times, Dec. 31, 2007.  According to Navy spokesman Cmdr. Rick Haupt, the cause of death was colorectal cancer.  *Id*; *see also* Carlotta Gall & Andy Worthington, *Time Runs Out for an Afghan Held by U.S.*, N.Y. Times, Feb. 5, 2008.

## Plaintiffs' FOIA Request

20.        On July 17, 2007, plaintiffs submitted a FOIA request to defendant DoD's FOIA office.

21.      The Request sought "all records relating to deaths, including but not limited to suicides, attempted suicides, accidental deaths, homicides, attempted homicides, and natural deaths, since January 2002 of detainees held in U.S. custody at the U.S. Naval Base located at Guantanamo Bay, Cuba."  Within that Request, plaintiffs specifically sought "all records relating to the deaths of the following detainees who were being held in U.S. custody at Guantanamo at the time of their deaths:  Mani Shaman Turki al-Habardi al-Utaybi (Saudi, born 1976); Yassar Talal al-Zahrani (Saudi, born 1984); Ali Abdullah Ahmed or S__lah_ Addin Ali Ahmed al-Salam_ (Yemeni, born 1970); Abdul Rahman Maadha al-Amry or 'Abd al-Rah_m_n al-'Amr_ (Saudi, born 1973)."

22.      Plaintiffs sought expedited processing of their Request on the grounds that the records are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public about actual or alleged Federal government activity," and because the records sought also relate to a "breaking news story."  32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R. 1900.34(c)(2).

23.      In addition, plaintiffs sought a waiver of search and review fees on the ground that the ACLU qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and its implementing regulations 32 C.F.R. § 286.28(e)(7) and 32 C.F.R. § 1900.13(i)(2).  Plaintiffs also sought a waiver of search, review and duplication fees on the grounds that disclosure of the requested records is in the public interest and "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" under 5 U.S.C. § 552(a)(4)(A)(iii) and its implementing regulations, 32 C.F.R. § 286.28(d) and 32 C.F.R. § 1900.13(b)(2).

## Plaintiffs' Entitlement to Expedited Processing

22.     The FOIA provides that requests characterized by a "compelling need" are to receive expedited processing in accordance with regulations promulgated by the queried agency. 5 U.S.C. § 552(a)(6)(E).  Under the expedited processing provision of the FOIA, as well as the corresponding regulation promulgated by the DoD, "compelling need" includes cases in which "the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 C.F.R. § 286.4(d)(3)(ii); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II).

23.     The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations.  5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R. § 1900.34(c)(2).  Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work.  *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (internal citation omitted)).  Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly circulated to the public.  Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee.  The ACLU also disseminates information through its heavily visited website, www.aclu.org.  The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused.  The website

specifically includes features on information obtained through the FOIA.  *See, e.g.*, www.aclu.org/torturefoia; www.aclu.org/spyfiles.  In 2007, more than 6.4 million unique visitors accessed the ACLU's website.  From January through March 2008 alone, there were over 2.6 million unique visitors.  The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.  Finally, the ACLU produces an in-depth television series on civil liberties.  The ACLU plans to disseminate to the public the information gathered through the July 17, 2007 Request.

24.    In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico.  These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters.  The ACLU also makes archived material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library.  The ACLU's publications are often disseminated to relevant groups across the country, which then further distribute them to their own members or to other parties.

25.    The records the ACLU sought, regarding deaths and attempted deaths of prisoners in U.S. custody at Guantanamo, directly relate to a breaking news story of general public interest that concerns actual or alleged federal government activity.  *See* 32 C.F.R. § 286.4(d)(3)(ii)(A); 32 C.F.R 1900.34(c)(2).

26.    The requested records are urgently needed within the meaning of the applicable regulations in order to provide the public with information about deaths and attempted deaths of detainees in U.S. custody at Guantanamo.  32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R.

1900.34(c)(2). The records requested are not sought for commercial use and the requesters plan

to disseminate the information disclosed as a result of this FOIA Request to the public at no cost.

27. Defendant DoD's regulations implementing FOIA specify that information is

"[u]rgently needed" where the information "has a particular value that will be lost if not

disseminated quickly" – a criterion that is generally met by "a breaking news story of general

public interest." 32 C.F.R. § 286.4(d)(3)(ii)(A).

28. In this case, there is extensive public and media interest in the deaths that have

occurred at Guantanamo. In support of their request for expedited processing, plaintiffs cited

dozens of news articles – including the articles described in paragraphs 11-20 above.

29. The District of Columbia uses a three-factor test to determine whether a FOIA

request demonstrates an "urgency to inform" under 5 U.S.C. § 552(a)(6)(E)(i)(I): "(1) whether

the request concerns a matter of current exigency to the American public; (2) whether the

consequences of delaying a response would compromise a significant recognized interest; and

(3) whether the request concerns federal government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 310,

311 (D.C. Cir. 2001).

30. Uncovering and disseminating information about prisoner deaths at

Guantanamo is a matter of current and urgent public concern. Most of the prisoners now at

Guantanamo are in their seventh year of captivity and the reported response of a sizable part of

the prisoner population to their treatment and on-going detention in U.S. government custody has

been hunger strikes and other suicide attempts. Defendant DoD admits that four men have

succeeded in killing themselves. Providing the public with additional and uncensored

information about the causes of prisoner deaths and attempted deaths, whether they could have

been prevented, and how current and future attempts will be addressed, is critical to the public's

ability to understand and monitor the government's ongoing conduct at Guantanamo.

**Plaintiffs' Entitlement to a Waiver or Limitation of Processing Fees**

31.     Plaintiffs are entitled to a waiver of document search, review, and duplication

fees because disclosure is "likely to contribute significantly to public understanding of the

operations or activities of the government and is not primarily in the commercial interest of the

requester."  5 U.S.C. § 552(a)(4)(A)(iii); *see also* 32 C.F.R. § 286.28(d).  As alleged above,

numerous news accounts reflect the considerable public interest in the records plaintiffs seek and

disclosure of these records will significantly enhance the public's understanding of defendant

DoD's policies and operations at Guantanamo.  Plaintiffs have no commercial interest in the

requested disclosure; as described above, any information disclosed by the plaintiffs as a result

of the Request will be available to the public at no cost.

32.     Plaintiffs are also entitled to a waiver of document search and review fees

because the ACLU qualifies as a "representative of the news media" and the records are not

sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii)(III); 32 C.F.R. § 286.28(e)(7).  As

described above, in paragraphs 23-24, the ACLU is an entity that gathers information of potential

interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct

work, and distributes that work to an audience.  Plaintiffs do not seek the requested information

for commercial reasons.  The ACLU summarizes, explains, and disseminates the information it

gathers through FOIA at no cost to the public.

**Defendants' Failure to**
**Disclose the Records Sought**

34.        Defendant DoD is improperly withholding the records sought by plaintiffs'
FOIA Request.  Despite the passage of more than eight months since the filing of the Request,
plaintiffs have received no records from the DoD.

35.        By letter dated July 30, 2007, defendant DoD denied plaintiffs' request for
expedited processing and denied plaintiffs' request to be designated a "representative of the news
media" for purposes of a waiver of search and review fees.  Defendant DoD also refused to deny
or grant plaintiffs' request for a public interest wavier for purposes of waiver of search, review
and duplication fees because, according to its letter, "decisions to waive or reduce fees are made
on a case-by-case basis and cannot be made until a search for responsive records has been
conducted and the volume and nature of any responsive records have been determined."  Instead,
plaintiffs were categorized as "others," and as a result were only entitled to free review time, 2
hours of free search time, and 100 pages of duplication.

36.        By letter dated August 23, 2007, plaintiffs administratively appealed the
DoD's denial of requests for expedited processing, denial of "representative of a media
requester" status, and the DoD's refusal to address plaintiffs' request for a public interest fee
waiver.

37.        By letter dated September 24, 2007, the DoD denied plaintiffs' administrative
appeal.

## CAUSES OF ACTION

### First Cause of Action:
### Violation of the FOIA for Failure to Make Promptly Available the Records Sought by Plaintiffs' Request

40.      Defendant's failure to make promptly available the records sought by

plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and the implementing agency

regulations.

### Second Cause of Action:
### Violation of the FOIA for Failure to Expedite the Processing of Plaintiffs' Request

41.      Defendant's failure to expedite the processing of plaintiffs' Request violates

the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and the agency regulation promulgated thereunder, 32

C.F.R. § 286.4(d)(3).

### Third Cause of Action:
### Violation of the FOIA for Failure to Reduce Fees in Processing Plaintiffs' Request

42.      Defendant's failure to reduce fees for the processing of plaintiffs' Request

violated the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and the agency regulation promulgated

thereunder, 32 C.F.R. § 286.28.

### Requested Relief

WHEREFORE, plaintiffs pray that this Court:

A. Order defendant immediately to process plaintiffs' Request in its entirety;

B. Order defendant, upon completion of such expedited processing, to disclose the

   requested records in their entirety and make copies available to plaintiffs;

C. Enjoin defendant from charging plaintiffs fees for the processing of their Request;

D. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

    E.  Grant such other relief as the Court may deem just and proper.

Dated:  April 17 , 2008

                         Respectfully submitted,

                         Hina Shamsi*
                         Nasrina Bargzie*
                         Jennifer Turner
                         Jameel Jaffer
                         American Civil Liberties Union Foundation
                         125 Broad Street, 18th Floor
                         New York, NY 10004
                         Phone:  (212) 519-7886
                         Fax:  (212) 549-2583
                         hshamsi@aclu.org

                          /s/ *Arthur B. Spitzer*

                         _____
                         Arthur B. Spitzer (D.C. Bar No. 235960)
                         American Civil Liberties Union
                          of the National Capital Area
                         1400 20th Street, N.W., Suite 119
                         Washington, DC 20036
                         Phone: (202) 457-0800
                         Fax: (202) 452-1868
                         artspitzer@aol.com

                         Deena Hurwitz††
                         International Human Rights Law Clinic
                         and Human Rights Program
                         University of Virginia School of Law
                         580 Massie Road, Charlottesville, VA 22903
                         Phone: (434) 924-4776
                         Fax: (434) 924-7315
                         drh9z@virginia.edu

                         *Counsel for Plaintiffs*

_____

\*  Motions for the admission *pro hac vice* of Ms. Shamsi and Ms. Bargzie will be filed after this complaint is docketed.
†† Assisted by Gabriel Walters and David Joseph Plante, students at the University of Virginia Law School International Human Rights Law Clinic.

## I (a) PLAINTIFFS

American Civil Liberties Union
American Civil Liberties Union Foundation

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arthur B. Spitzer
American Civil Liberties Union of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800

## DEFENDANTS

United States Department of Defense

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

◉ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ○ A. Antitrust

☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
    Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
    defendant

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
    Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
    Rates/etc.

☐ 470 Racketeer Influenced &
    Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
    Exchange
☐ 875 Customer Challenge 12 USC
    3410
☐ 900 Appeal of fee determination
    under equal access to Justice
☐ 950 Constitutionality of State
    Statutes
☐ 890 Other Statutory Actions (if
    not administrative agency
    review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ⊙ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Freedom of Information Act, 5 U.S.C. § 552, and First Amendment. Failure to release public documents.

## VII. REQUESTED IN COMPLAINT

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in compla...   JURY DEMAND:   YES ☐   NO ☒

## VIII. RELATED CASE(S) IF ANY

(See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE   April 17, 2008   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.